UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| PHILLIP HOWSE, individually and on behalf of his marital community with GWENDYLENA HOWSE, his wife,<br><br>Plaintiff,<br>v.<br><br>DEPARTMENT OF CORRECTIONS, et al.,<br><br>Defendants. | CASE NO. C16-5939 BHS<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND |

This matter comes before the Court on Defendants the State of Washington, the Department of Corrections ("DOC"), and the Washington State Department of Social and Health Services' ("DSHS") (collectively "Defendants") motion for summary judgment, Dkt. 59, and Plaintiff Phillip Howse's ("Howse") motion for leave to amend, Dkt. 66. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

ORDER - 1

# I. PROCEDURAL HISTORY

On November 9, 2016, Howse and his wife, Gwendylena, filed a complaint against Defendants asserting claims for violations of civil rights under 42 U.S.C. § 1981, violations of civil rights under 42 U.S.C. § 1983, race discrimination in violation of federal and state statutes, retaliation, hostile work environment, negligent infliction of emotional distress, and loss of consortium. Dkt. 1. On November 15, 2016, Howse and his wife filed an amended complaint. Dkt. 7. On November 30, 2017, the Court granted Howse's motion for leave to file a second amended complaint. Dkt. 31. Later that day, Howse filed the second amended complaint asserting the same claims but removing his wife as a party. Dkt. 32.

On August 30, 2018, Defendants filed a motion for summary judgment. Dkt. 59. On September 13, 2018, Howse filed a motion to amend his complaint. Dkt. 66. On September 17, 2018, Howse responded to Defendants' motion and moved to strike certain evidence that Defendants submitted in support of their motion. Dkt. 69. On September 21, 2018, Defendants replied to Howse's response and moved to strike certain evidence that Howse submitted in support of his response. Dkt. 74. On September 24, 2018, Defendants responded to Howse's motion. Dkt. 76. On September 28, 2018, Howse replied to Defendants' response. Dkt. 80.

# II. FACTUAL BACKGROUND

On February 17, 1998, DSHS hired Howse as an auto mechanic at its Fircrest School. In April 2011, DSHS promoted Howse to Equipment Technician 5 at McNeil Island Special Commitment Center ("SCC"). On September 1, 2013, the State

transferred responsibility for McNeil Island's maintenance. After this transfer, Howse became an Equipment Technician Supervisor with Correctional Industries ("CI") at McNeil Island.

On October 15, 2012, Howse filed an incident report regarding pornography inexplicably appearing on his work computer. Consolidated Maintenance Operations ("CMO") Administrator Mike Allen ordered an investigation, which revealed that Howse's state computer and log-on information was used to access several non-work-related websites during work hours, including pornographic sites. Howse denied accessing pornographic sites but admitted accessing other non-work-related websites. Dkt. 71, Declaration of Phillip Howse ("Howse Dec."), ¶ 5. Howse also admitted providing several subordinates access to his computer log-on information. *Id.* ¶ 13. The investigation was ultimately unable to conclude who had accessed the pornographic websites, but DSHS issued Mr. Howse a five-day suspension as discipline for violating agency policy. Howse grieved the suspension through his union, and the grievance was resolved by reducing the suspension to one day. Howse, his union, and DSHS entered into a settlement agreement reflecting this resolution.

In February 2014, Howse was involved in two separate incidents that required formal investigations. First, CI Assistant Director Jeannie Miller noticed Howse's cell number incurred multiple charges for after-hours calls between September 2013 and January 2014. Howse asserts that the calls were to his wife and son and should have been considered de minimus use that is allowed under State policies. *Id.* ¶¶ 6–7. The

investigation resulted in a Letter of Expectations, Dkt. 61 at 72, which is not considered a disciplinary action, Dkt. 59 at 3 n.5.

Second, on February 24, 2014, Howse attempted to board the McNeil Island ferry with a box containing pornographic material, which is considered contraband on the island. Howse was escorted from the island and placed on home assignment. CI Director Lyle Morse ordered an investigation into this incident. During the investigation, Howse admitted knowing that pornographic materials were not permitted on McNeil Island. This investigation also resulted in a Letter of Expectations. Dkt. 61 at 72.

On May 27, 2014, SCC Food Service Program Manager Paul Temposky accused Howse of "stomping" on his foot while the two were disembarking the McNeil Island ferry. CI Director Danielle Armbruster ordered an investigation, which was unable to substantiate Mr. Temposky's allegations against Howse. Thus, Howse received no explicit discipline for this allegation.

On July 31, 2014, Howse used the phrase "woe [sic] bitch" while working on an engine with some offender workers. One offender, a self-identified Aryan Nations member, took offense. Concerned about potential safety issues, a co-worker wrote an incident report to document the interaction. On August 28, 2014, CI General Manager Richard Flores issued Howse a memorandum of concern about using profanity in the workplace, which is not considered a disciplinary action. Dkt. 59 at 4 n.10.

In September and October 2014, Howse sent three separate emails to his immediate supervisor, CI Industries Manager Brian Clark, requesting a total of 240 hours of sick leave. Dkt. 61 at 125, 132, 136. Based on Howse's lack of communication

regarding his absence from work and email requests for sick leave, CI Director Danielle Armbruster requested the police conduct a welfare check on Howse at his residence. Dkt. 61 at 131–32. Ms. Miller and Ms. Armbruster sent Howse letters providing information regarding the Family Medical Leave Act ("FMLA") to assist Howse in protecting his absence and informing him that he needed to obtain a medical release before returning to work.

On September 29, 2014, Howse's medical provider contacted Ms. Miller to ask for her fax number at DOC, ostensibly to provide information regarding Howse's leave. Ms. Miller provided her fax number and e-mail address, but did not receive any information, even after following up with the provider. On October 5, 2014, Howse advised Mr. Clark by email that he would return to work on October 20, 2014.

Howse failed to report to work or contact his supervisor on October 20, 21, and 22, 2014. In accordance with Article 47.12 of the collective bargaining agreement, Ms. Armbruster sent Howse a letter on October 22, 2014 terminating his employment for abandoning his position and not showing up for work or contacting his supervisor. Dkt. 61 at 138. Howse petitioned for reinstatement and produced an email from his health care provider dated October 11, 2014, requesting his medical leave be extended to October 26, 2014. Ms. Armbruster declined to reinstate Howse. *Id.* at 116.

On or about March 5, 2014, Howse filed a whistleblower complaint with the State Auditor's Office, alleging improper governmental action at DSHS. Specifically, Howse reported concerns of discrimination, failure to complete an investigation, reckless misuse of confidential documents, sexual misconduct, and rendering false information to the

authorities. The Auditor's Office determined the complaint's "nature and quality of evidence [was] lacking" and declined to investigate.

On or about January 12, 2015, Howse filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging Defendant DOC had engaged in race discrimination and retaliation against him between October 15, 2012 and October 22, 2014. Upon learning of these allegations at the EEOC mediation, Ms. Armbruster directed workplace investigator Patricia Boday to investigate the allegations. Ms. Boday was unable to substantiate Howse's allegations. On August 11, 2016, the EEOC issued a Dismissal and Notice of Rights letter to Mr. Howse, indicating it could not conclude violations occurred.

Howse's union grieved his termination based on presumption of resignation on Howse's behalf. Howse prevailed in arbitration and won reinstatment to his Equipment Technician Supervisor position with his seniority restored within 30 days of the arbitrator's order. On May 2, 2016, Howse returned to work on McNeil Island.

Since his return to work, Howse has been the subject of two investigations. In July 2016, his then-supervisor, Mr. Clark, accused Mr. Howse of aggressively moving toward him during an argument. The investigation concluded Howse had approached Mr. Clark in a threatening manner, and Howse received a written reprimand. A safety plan was put into place to minimize the contact between Howse and Mr. Clark. After Howse violated the safety plan three times, he was reassigned to an alternate location and received a letter of reprimand. Howse returned to McNeil Island in late 2016 upon Clark's reassignment to another work location.

In July 2017, Howse was accused of aggressive behavior toward heavy equipment operator Charlene Harvey. Howse was assigned to alternate locations while the investigation was pending. The investigation into that incident was unable to substantiate Ms. Harvey's allegations. Howse received no discipline and returned to work on the island.

In his response, Howse identifies six unwelcomed race-based comments in support of his hostile work environment claim. Dkt. 69 at 12. Howse does not disclose when his co-workers made these comments or whether his supervisors were aware of the comments. Howse asserts that some comments were made by supervisors but fails to establish that inappropriate comments were made by his direct supervisor. *See, e.g.*, Howse Decl., ¶ 21 ("Carl Robinson, who was a supervisor at DSHS").

## III. DISCUSSION

In this case, the parties present four main issues for the Court's consideration. First, the parties request that certain evidence be stricken from the record and not considered for the purposes of summary judgment. Second, Defendants argue that Howse's claims should be dismissed for failure to properly serve Defendants. Third, Defendants request summary judgment on the merits of Howse's claims. Finally, Howse moves for leave to amend.

**A.    Motion to Strike**

Howse moves to strike the declarations of Heather Mellor, Laura Bachmann, and Vanessa Gallwas because (1) Defendants did not disclose these individuals as potential witnesses and (2) Howse has not had an opportunity to depose them. Dkt. 69 at 15.

Defendants are required to disclose the name and contact information "of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses." Fed. R. Civ. P. 26(a)(1)(A)(i). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "The party facing sanctions bears the burden of proving that its failure to disclose the required information was substantially justified or is harmless." *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012) (citing *Torres v. City of L.A.*, 548 F.3d 1197, 1213 (9th Cir. 2008)).

In this case, Defendants admit that they failed to disclose these witnesses but argue that the failure is harmless because the witnesses are only authenticating documents and providing testimony regarding Howse's failure to properly serve Defendants. Dkt. 74 at 4–5. The Court agrees with Defendants, and Howse fails to offer any argument or authority to the contrary. Instead, he merely states that the witnesses were not disclosed, without offering any facts establishing actual prejudice. Therefore, the Court denies Howse's motion to strike.

Regarding Defendants' motion, they argue that the court should strike the portions of Howse's declaration that are not based on personal knowledge. Dkt. 74 at 3. The Court agrees that the declaration contains some speculation and hearsay. Instead of striking specific portions that are inadmissible, the Court will cite the admissible facts that it relies upon in considering the motion for summary judgment.

**B.      Service**

Defendants move to dismiss Howse's claims for failure to properly serve Defendants. Dkt. 59 at 8–9. While it appears that Howse failed to properly serve Defendants, the Court normally orders that service be made within a specified time instead of the more drastic sanction of dismissal. Therefore, the Court denies as moot Defendants' motion on this issue because the Court grants Defendants' motion on the merits.

**C.      Summary Judgment**

Defendants move to dismiss all of Howse's claims. Dkt. 59 at 25. Although Howse filed a response opposing Defendants' motion, he fails to articulate exactly what arguments he opposes. For example, in his argument section, Howse cites only two authorities and those authorities only address the Washington Law Against Discrimination ("WLAD"). *See* Dkt. 69 at 4–12 (citing *Goode v. Tukwila Sch. Dist. No. 406*, 194 Wn. App. 1048 (2016), and *Marin v. King Cty.*, 194 Wn. App. 795, 815 (2016), *review denied sub nom. Marin v. King Cty., WA.*, 186 Wn.2d 1028 (2016)). Defendants argue, based on non-binding authorities, that a failure to explicitly oppose arguments in a motion for summary judgment results in abandonment of those claims. Dkt. 74 at 6 n.23 (citing *Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003), and *Douglas v. Victor Capital Group*, 21 F.Supp.2d 379, 393 (S.D.N.Y. 1998)). The Court is unaware of any binding authority to support Defendants' proposition.[1] Instead, Defendants are

---

[1] At most, a failure to oppose arguments in support of summary judgment operates as a waiver of those arguments on appeal. *Panagacos v. Towery*, 692 Fed. Appx. 330, 333 (9th Cir. 2017) ("the

entitled to summary judgment so long as they establish judgment is appropriate as a matter of law and Howse fails to establish that material questions of fact exist for trial. Fed. R. Civ. P. 56(c). Moreover, where no factual showing is made in opposition to a motion for summary judgment, the court is not required to search the record *sua sponte* for some genuine issue of material fact. *See Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001). "It is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).

Under these standards, the Court concludes that Howse has failed to meet his burden on several issues. For example, Defendants argue that they are entitled to Eleventh Amendment immunity against Howse's claims brought in federal court, except his claims for retaliation and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). Dkt. 59 at 9–10. The Court agrees with Defendants, and Howse fails to cite any authority to the contrary. Therefore, the Court grants Defendants' motion on these claims and dismisses the claims without prejudice. The Court will address Howse's remaining Title VII claims on the merits.

---

Washington constitutional claims and the Fifth and Sixth Amendment claims are waived since Plaintiffs failed to respond to [these claims] at the summary judgment stage.")

### 1. Standard

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

### 2. Title VII

In this case, Howse asserts a claim for retaliation in violation of Title VII and a claim for a hostile work environment in violation of Title VII. Dkt. 32, ¶¶ 81–117.

#### a. Retaliation

"[A] plaintiff who lacks direct evidence of retaliation must first make out a prima facie case of retaliation . . . ." *Emeldi v. Univ. of Ore.*, 673 F.3d 1218, 1223 (9th Cir. 2012) (quoting *Brown v. City of Tucson*, 336 F.3d 1181, 1192 (9th Cir. 2003)). "Once a plaintiff has made the threshold prima facie showing, the defendant must articulate a legitimate, non-retaliatory reason for the challenged action." *Id.* at 1224 (citing *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008)). "If the defendant does so, the plaintiff must then 'show that the reason is pretextual either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Id.* (quoting *Davis*, 520 F.3d at 1089).

To establish a prima facie claim of retaliation, a plaintiff must prove that (1) the plaintiff engaged in a protected activity, (2) the plaintiff suffered an adverse employment action, and (3) there was a causal link between the plaintiff's protected activity and the

adverse employment action. *Villiarimo v. Aloha Is. Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). "[T]he standard for the 'causal link' is but-for causation." *T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 473 (9th Cir. 2015). "This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the [defendant]." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *see also Gallagher v. San Diego Unified Port Dist.*, 668 Fed. Appx. 786, 786 (9th Cir. 2016) ("Gallagher's evidence does not show that retaliation was *the* cause of the non-renewal of his anchorage permit, as the but-for test requires."); *Brenneise*, 806 F.3d at 473 ("there were many plausible explanations why the district may have [committed the alleged adverse action]. Retaliation was not one of them.").

In this case, Howse fails to establish a prima facie case of retaliation. Howse's response is filled with unsupported conclusions of law, and he fails to identify a material issue of fact. For example, Howse contends that the Letters of Expectation were adverse employment actions even though he concedes that his "collective bargaining agreement states [they are] not." Dkt. 69 at 7. This is not a material issue of fact because, even if the Court considers the letters as adverse employment actions, Howse fails to establish that retaliation was the but-for cause of either letter. The letters were the results of investigations into pornography use on his work computer and personal calls on his work phone. Similarly, Howse argues that the investigations themselves were wrongful retaliation. *Id.* Yet, he admits that he filed an incident report that instigated an investigation into the use of pornography. *Id.* Thus, there were at least two causes for

the investigation, alleged retaliation and/or his incident report regarding pornography randomly appearing on his computer. In this factual scenario, he fails to show that the alleged retaliation was the but-for cause of the investigation. Therefore, the Court finds that Howse fails to establish a prima facie case based on either the investigations or the Letters of Expectation.

Likewise, Howse alleges that he faced wrongful retaliation based on his tort claim and the EEOC charge of discrimination. Dkt. 32 at 110. Howse fails to address these allegations in his response. *See* Dkt. 69 at 5–12. Thus, he has failed to "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan*, 91 F.3d at 1279. Howse bears the burden of establishing an adverse employment action and but-for causation. By failing to address these allegations in his response, he has failed to meet his burden. Therefore, the Court grants Defendants' motion for summary judgment on Howse's Title VII retaliation claims because Howse has failed to establish a prima facie case of retaliation.

Even if Howse could somehow establish his prima facie case, Defendants have submitted admissible evidence of legitimate, non-retaliatory reason for all the challenged actions. *See, e.g.*, Dkt. 61 at 66–70 (letter of reprimand detailing improper cell phone use and bringing pornography to McNeil Island.). Similarly, Howse fails to show pretext for any alleged adverse action. He provides unsupported conclusions that other similarly situated employee were not treated the same way. *See* Howse Dec., ¶ 12 ("Other Caucasian employees are allowed deminimus [sic] use of the internet, but have not been disciplined, such as Tim Taylor, Steven Stewart, Charlene Harvey and James Herman.").

Such unsupported allegations fail to convince the Court "that a discriminatory reason more likely motivated the employer" or "that the employer's proffered explanation is unworthy of credence." *Emeldi*, 673 F.3d at 1223. Therefore, the Court also grants Defendants' motion for summary judgment on Howse's Title VII claims because Defendants have offered legitimate, non-retaliatory reasons for Howse's alleged adverse actions, and Howse has failed to establish pretext.

        **b.**       **Hostile Work Environment**

Under Title VII, it is unlawful for an employer to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of his race, color, religion, sex, or national origin. *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003), as amended (Jan. 2, 2004) (citing 42 U.S.C. § 2000e–2(a)(1)). To prevail on a hostile workplace claim, a plaintiff must show: (1) that he was subjected to verbal or physical conduct of a racial nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or pervasive as to alter the conditions of the plaintiff's employment and create an abusive work environment. *Id.*

In this case, Howse fails to show unwelcome conduct that was sufficiently severe or persuasive. Defendants initially argue that the Court should limit Howse's claim to three instances of race-based conduct. Dkt. 59 at 21. Without addressing this argument, Howse responded listing six other inappropriate race-based comments and actions that he was subjected to by co-workers. Dkt. 69 at 12. Defendants counter that Howse fails to identify when he was subjected to these comments within his twenty-year history of

employment or establish he notified his employer of these unwelcomed comments. Dkt. 74 at 8–9. The Court agrees with Defendants that Howse has failed to show that his employer knew of any of these comments. *See Swinton v. Potomac Corp.*, 270 F.3d 794, 803 (9th Cir. 2001) ("If, however, the harasser is merely a co-worker, the plaintiff must prove that the employer was negligent, *i.e.* that the employer knew or should have known of the harassment but did not take adequate steps to address it."). More importantly, Howse fails to establish a severe or pervasive hostile environment. *See Vasquez*, 349 F.3d at 642 (quoting *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270–71 (2001)) ("we look at 'all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance'"). Instead, Howse relies upon sporadic comments, some of which were not directed toward him in particular. Under these facts, the circumstances do not establish a hostile work environment. Therefore, the Court grants Defendants' motion on Howse's Title VII hostile work environment claim.

**D.    Leave to Amend**

"[W]hen a party seeks to amend a pleading after the pretrial scheduling order's deadline for amending the pleadings has expired, the moving party must satisfy the 'good cause' standard of Federal Rule of Civil Procedure 16(b)(4), which provides that '[a] schedule may be modified only for good cause and with the judge's consent,' rather than the liberal standard of Federal Rule of Civil Procedure 15(a)." *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013). This good cause standard

"primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). "If the moving party 'was not diligent, the inquiry should end.'" *Neidermeyer v. Caldwell*, 718 Fed. Appx. 485, 489 (9th Cir. 2017), *cert. denied*, 17-1490, 2018 WL 2046246 (U.S. Oct. 1, 2018) (quoting *Johnson*, 975 F.2d at 609).

In this case, Howse has failed to show good cause to amend his complaint. Howse seeks leave to amend to clarify his loss of consortium claim and to add individually liability of two co-workers, Mr. Clark and Mark McFarland. Dkt. 66. Howse, however, knew of the alleged comments by Mr. Clark and Mr. McFarland and has failed to establish diligence in adding these clarifying claims. Thus, the inquiry ends here. *Neidermeyer*, 718 Fed. Appx. at 489 ("Neidermeyer has already had two opportunities to amend his complaint and has offered no explanation for his undue delay in seeking a third, the lateness of which would prejudice Officer Caldwell.").

Even if Howse was diligent, his amendments would be futile in federal court. His attorney even concedes this by stating that Howse seeks amendment "to avoid filing another lawsuit in state court based upon a new tort claim with the same parties." Dkt. 67 at 2, ¶ 4. The Court has dismissed the majority of Howse's claims based on Eleventh Amendment immunity, and he must file a state court action if he intends to pursue those claims. Adding his "new" claims will not be difficult. Therefore, the Court denies Howse's motion for leave to amend.

# IV. ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 59, is **GRANTED in part** and **DENIED in part** as stated herein and Howse's motion for leave to amend, Dkt. 66, is **DENIED**. The Clerk shall enter a **JUDGMENT** in favor of Defendants and close the case.

Dated this 11th day of October, 2018.

BENJAMIN H. SETTLE
United States District Judge